UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JOSE CISNEROS,                                 #18-CV-00966-FPG
                                                                   #16-CR-00069-RJA
                            Petitioner,         DECISION AND ORDER

v.

UNITED STATES OF AMERICA,

                            Respondent.

---

## INTRODUCTION

*Pro se* Petitioner Jose Cisneros has moved pursuant to 28 U.S.C. § 2255 ("Section 2255") to vacate, set aside or correct his sentence. ECF No. 42. For the reasons set forth below, relief under Section 2255 is DENIED, and the motion is DISMISSED.

## BACKGROUND

In a one-count Criminal Information dated March 30, 2016, ECF No. 1,[1] Petitioner was charged with knowingly enticing a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, in violation of 18 U.S.C. §§ 2251(a) and 2252A(a)(2)(A).

On October 14, 2016, Petitioner appeared with his assigned attorney ("Trial Counsel") before United States District Judge Richard J. Arcara. Petitioner waived indictment and pleaded guilty to one count of 18 U.S.C. § 2252A(a)(5)(B) (knowing possession of material that contains an image of child pornography). ECF No. 50. The plea agreement, ECF No. 12, contemplated that Petitioner's advisory range under the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") would be a term of 120 months' imprisonment. ECF No. 12 ¶ 16. The plea

---

[1] Citations to the docket are to the criminal case, 16-cr-69.

1

agreement also contained a provision pursuant to which Petitioner agreed to waive his rights to challenge on direct review or collaterally any part of his sentence that was 120 months or less. *See id.* ¶ 23.

Prior to sentencing, a conflict of interest arose with Trial Counsel, who moved to withdraw. ECF No. 47. Judge Arcara appointed a new attorney ("Sentencing Counsel") to represent Petitioner at sentencing. On September 25, 2017, Judge Arcara sentenced Petitioner to 108 months' imprisonment to be followed by a 5-year term of supervised release. ECF No. 49. Petitioner did not appeal.

In his timely filed a Motion to Vacate/Petition, ECF No. 42, Petitioner raises a number of claims of ineffective assistance by Trial Counsel and Sentencing Counsel. *See id.* at 4, 15-18. In particular, Petitioner asserts that Trial Counsel failed to conduct a "thorough investigation" to uncover "mitigating evidence," *id.* at 4, 15, 17-18; "pressured" him into accepting the plea agreement, *id.* at 4, 15; failed to explain the plea agreement, *id.* at 4, 17-18; "deceptively" told Petitioner that the appellate rights waiver functioned differently than it actually did, *id.* at 4, 17; and failed to act as the Government's adversary, *id.* Petitioner faults Sentencing Counsel for failing to object to "incorrect facts and sentencing enhancements," *id.* at 4, 18; and failing to introduce favorable "character reports" from the mother of his children and one of his friends, as well as "mitigating evidence," *id.* at 15-16, 18.

Respondent answered the Petition, arguing that all of Petitioner's claims lack merit, ECF No. 51 at 4-16, and that the collateral attack rights waiver in the plea agreement procedurally bars the Petition, *id.* at 16-21.

Petitioner filed a Reply, acknowledging that he "knowingly and willingly signed the plea deal," but asserting that Trial Counsel "lied" and "misled" him about the Guidelines, "which did not match the charge in the plea deal." ECF No. 53 at 1-2.

## DISCUSSION

### I. Standard of Review Under 28 U.S.C. § 2255

Relief "is generally available under [Section] 2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)). "In ruling on a motion under [Section] 2255, the district court is required to hold a hearing '[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" *Gonzalez v. United States*, 722 F.3d 1187, 130 (2d Cir. 2013) (quoting 28 U.S.C. § 2255(b)). Because Petitioner is appearing *pro se*, the Court must interpret the Petition liberally to raise the strongest arguments it suggests. *Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001).

### II. The Collateral Attack Rights Waiver

#### A. Relevant Law

"Where the record clearly demonstrates that the defendant's waiver of [his] right to appeal a sentence within an agreed Guidelines range was knowing and voluntary, that waiver is enforceable." *United States v. Monzon*, 359 F.3d 110, 116-17 (2d Cir. 2004) (citations omitted). This principle applies equally to waivers of collateral attack rights. *Sanford v. United States*, 841 F.3d 578, 580 (2d Cir. 2016) (*per curiam*) (citing *Tellado v. United States*, 745 F.3d 48, 54-55 (2d Cir. 2014)).

However, the Second Circuit has "suggested that a plea agreement containing [such] a waiver . . . is not enforceable where the defendant claims that the plea agreement was entered into without effective assistance of counsel[,]" *United States v. Hernandez*, 242 F.3d 110, 113-14 (2d Cir. 2001) (internal citations omitted), the rationale being "that 'the very product of the alleged ineffectiveness' cannot fairly be used to bar a claim of ineffective assistance of counsel." *Id.* (quoting *Jones v. United States*, 167 F.3d 1142, 1145 (7th Cir. 1999)). Only claims of ineffective assistance that relate to the entry of the plea agreement may be used as a basis to challenge the enforceability of a rights waiver. *See, e.g.*, *United States v. Djelevic*, 161 F.3d 104, 107 (2d Cir. 1998) ("emphatically reject[ing] th[e] contention" that defendant's "waiver should not bar consideration of his appeal because counsel was ineffective not at the time of the plea, but at sentencing").

The two-part standard articulated in *Strickland v. Washington*, 466 U.S. 668 (1984), applies to ineffective assistance claims arising out of the plea process. *Hill v. Lockhart*, 474 U.S. 52, 57, (1985). The "deficient performance" prong requires a showing that the advice counsel provided with regard to the decision to plead guilty was outside the "wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690; *see also Hill*, 474 U.S. at 56, 58. To satisfy the "prejudice" requirement in the plea context, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.

There is a "strong presumption of accuracy," *United States v. Juncal*, 245 F.3d 166, 171 (2d Cir. 2001), that attaches to a "defendant's sworn statements, made in open court . . . that he understood the consequences of his plea[,]" *Hernandez*, 242 F.3d at 112. A defendant's later "self-serving and contradictory" assertions generally do not suffice to undermine a finding of

4

voluntariness. *Juncal*, 245 F.3d at 171 (citing *Blackledge v. Allison*, 431 U.S. 63, 74 (1977) ("The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."); other citations omitted)).

      **B.**    **Analysis of Trial Counsel's Representation in Connection with the Guilty Plea**

According to Petitioner, Trial Counsel committed the following errors which impermissibly affected his decision to plead guilty:

1. Trial Counsel failed to conduct a thorough pre-plea investigation and uncover "mitigating evidence," ECF No. 42 at 4, 15-18;
2. He pressured Petitioner to plead guilty and refuse to consider taking Petitioner's case to trial because he believed Petitioner was guilty, *id.* at 4, 15, 17;
3. He did not explain the plea agreement adequately, *id.* at 4, 17-18;
4. He "misled" Petitioner about the Guidelines that would be utilized in calculating his sentence, ECF No. 53 at 1-2.

      **1.**    **Failure to Investigate**

When a defendant alleges that his attorney failed "to investigate thoroughly, which in turn caused [him] to plead guilty, [he] must show a likelihood that some evidence would have been discovered which would have caused his attorney to change his recommendation to enter into a plea agreement." *United States v. Kauffman*, 109 F.3d 186, 191 (3d Cir. 1997) (citing *Hill*, 474 U.S. at 59). The duty to make a reasonable investigation "does not . . . compel defense counsel . . . to scour the globe on the off-chance something will turn up." *Greiner v. Wells*, 417 F.3d 305, 320-21 (2d Cir. 2005).

Petitioner claims that had Trial Counsel properly "uncovered possible defenses or mitigating evidence," he "may have rejected the plea agreement and proceeded to trial." ECF No. 42 at 17. Petitioner does not elaborate on any "possible defenses" he may have had, and the only "mitigating evidence" to which he alludes consists of factors relevant to sentencing, such as the

5

fact he was a first-time felony offender and had accepted responsibility, and that he was not the only defendant indicted for conduct involving the same victim. *See* ECF No. 42 at 4, 15-18.[2] However, these sentencing factors are wholly irrelevant to the question of Petitioner's guilt or Trial Counsel's assessment of the strength of the Government's case. Petitioner has not identified any evidence that would have actually assisted Trial Counsel in defending him against the crime with which he was charged. Therefore, he has not established that Trial Counsel performed unreasonably or that he was prejudiced by Trial Counsel's pre-plea investigation.

### 2. Pressure to Plead Guilty

Second, Petitioner asserts Trial Counsel pressured him to plead guilty by telling him that he had "better hope the court is merciful because a jury would hang [him]," and "they had [him] dead to rights." ECF No. 42 at 17. According to Petitioner, by recommending a guilty plea, Trial Counsel failed to "act as the government's adversary." *Id.* at 4.

"As a general matter, a plea is deemed . . . 'voluntary' if it is not the product of actual or threatened physical harm, mental coercion overbearing the defendant's will, or the defendant's sheer inability to weigh his options rationally." *Miller v. Angliker*, 848 F.2d 1312, 1320 (2d Cir. 1988). An attorney's "blunt rendering of an honest but negative assessment of [a defendant]'s chances at trial, combined with advice to enter the plea, [do not] constitute improper behavior or coercion that would suffice to invalidate a plea." *Juncal*, 245 F.3d at 172 (citations omitted).

Trial Counsel's assessment of the strength of the Government's case does not appear exaggerated. Petitioner was charged with a violation of 18 U.S.C. § 2252A(a)(5)(B), which "punishes the (1) knowing possession of . . . , (2) any print material, film, or computer media, (3) containing an image of child pornography." *United States v. Brune*, 767 F.3d 1009, 1019 (10th

---

[2] Sentencing Counsel appropriately argued these favorable factors at length in pre-sentencing briefing and at the sentencing hearing.

6

Cir. 2014). "Child pornography" means, *inter alia*, any digital image visually depicting a minor engaging in sexually explicit conduct, which includes a "lascivious exhibition" of the genitals, *see* 18 U.S.C. § 2256(2)(A)(v), (8). As detailed in the Criminal Information, ECF No. 1, and Pre-Sentencing Report ("PSR"), ECF No. 29, the Government was in possession of numerous sexually explicit text messages Petitioner exchanged on his cellphone with the 13-year-old female victim; in the messages he acknowledged that she was under-age and that they should not be having these conversations. He also admitted to FBI agents that he asked for and received, via text message on his cell phone, at least one digital photograph of the victim's vagina. *See, e.g.*, ECF No. 29 ¶¶ 21-22. As Judge Arcara observed at the plea colloquy, Trial Counsel was "not there to make [Petitioner] feel good[;] [h]e's there to be [his] legal advisor." ECF No. 50 at 4. Trial Counsel's recommendation to plead guilty and his prediction about an unfavorable trial outcome were not coercion or misconduct but rather represented considered professional opinion based on the facts. *See United States v. Moree*, 220 F.3d 65, 72 (2d Cir. 2000) ("That the attorney advised [defendant] to take the [plea] offer and warned him that his failure to do so would lead to a thirty year sentence merely asserts that the lawyer gave professional advice as to what the consequences of his choice might be.").

Moreover, Petitioner averred, under oath in open court, that no one had forced or threatened him to plead guilty; that he had discussed the plea agreement with his attorney; and that, after these discussions, he wished to plead guilty and waive certain rights. ECF No. 50 at 27. When asked if he was "fully satisfied with the advice and counsel [he] received from [Trial Counsel]," Petitioner replied affirmatively. Judge Arcara pressed him as to whether he had "[a]ny complaints [about Trial Counsel]," and Petitioner replied, "No, Your Honor." *Id.* at 3-4. Petitioner's sworn statements during the plea colloquy, which the Court is entitled to credit, fatally undermine his claim that his

guilty plea was the product of coercion or pressure by Trial Counsel. *United States v. Moree*, 220 F.3d 65, 72 (2d Cir. 2000) ("That the attorney advised [defendant] to take the [plea] offer and warned him that his failure to do so would lead to a thirty year sentence merely asserts that the lawyer gave professional advice as to what the consequences of his choice might be. The defendant's statement that he was 'scared' is understandable, but is not attributed to any misconduct of his attorney.").

### 3.     Failure to Explain the Plea Agreement

Third, Petitioner contends that trial counsel "failed to explain the plea agreement," and "deceptively" told him that the appellate and collateral attack rights waiver "functioned differently than it was meant to." ECF No. 42 at 4. The record, however, offers no hint that, at the time he entered his plea, Petitioner misunderstood the import of the waiver of rights provision or was dissatisfied with Trial Counsel's advice about pleading guilty.

During the colloquy, the prosecutor read into the record all of the pertinent provisions of the plea agreement. ECF No. 50 at 10-26. After each provision was read aloud, Judge Arcara asked Petitioner if he understood it. *Id.* Of particular relevance here, paragraphs 23 and 24 of the plea agreement set forth the contents of the appellate and collateral attack rights waivers. ECF No. 12 ¶¶ 23-24. After both provisions were read, Judge Arcara asked, "Do you understand that, sir?" *Id.* Petitioner replied, "Yes, Your Honor." ECF No. 50 at 24.

The prosecutor also read the provision at the end of the plea agreement wherein Petitioner stated that, by signing the agreement, he affirmed that he had read it, that he "had a full opportunity to discuss this agreement with [his] attorney," that he "understand[s] all of the consequences of [his] plea of guilty," that he "fully agree[s] with the contents of this agreement," and that he is "signing this agreement voluntarily and of [his] own free will." ECF No. 50 at 26.

After completing the review of the plea agreement, Judge Arcara asked Petitioner whether he had "any questions about what [they] did here," to which Petitioner responded, "No, Your Honor." ECF No. 50 at 26. Furthermore, the Court notes that earlier in the colloquy, Petitioner did not hesitate to speak up when he had a question. *See id.* at 16. This strongly suggests that if Petitioner truly did not understand the effect of the appellate and collateral attack rights waiver provisions, he would not have been inhibited from asking for further explanation.

"The knowing and voluntary nature of the waiver can be established by demonstrating that during the plea hearing, the defendant's attention was drawn to the waiver provision in the plea agreement." *Londono v. United States*, No. 11 CV. 6773 CM, 2012 WL 2376456, at *2 (S.D.N.Y. June 21, 2012) (citing *United States v. Gomez-Perez*, 215 F.3d 315, 319 (2d Cir. 2000)) (other citation omitted). That is what occurred here, and Petitioner's attempt to undermine the validity of his rights waiver is based solely on unsupported allegations that merely contradict what he said in open court, under oath. The Court finds no basis to credit his belated and self-serving statements, which fail to overcome the "presumption of accuracy" accorded to his earlier, sworn statements. *See, e.g.*, *Abrams v. United States*, No. 11-CV-672 ENV, 2012 WL 4086765, at *4 (E.D.N.Y. Sept. 17, 2012) ("[T]he record leaves no doubt that petitioner knowingly, voluntarily, and intelligently agreed to the appellate waiver. Abrams fails to present any credible evidence undermining his sworn testimony that he, in fact, understood the plea waiver when he pled guilty, and eschewed the Court's offer to answer any questions he might have about it.") (internal citation omitted).

### 4. Erroneous Advice About the Guidelines

Fourth, Petitioner asserts that Trial Counsel "lied" and "misled" him about the Guidelines, "which did not match the charge in the plea deal." ECF No. 53 at 1-2. Although he was charged in the plea agreement with possession of child pornography, and his sentencing range was 0 to 10

9

years, he contends the Government "raised the Guidelines" as if he was being "charged with production of child pornography and they were set at 12-15 years." *Id.* at 2. When he asked Trial Counsel about challenging the Guidelines in the plea agreement, Trial Counsel "assured [Petitioner] that the judge did not have to follow the Guidelines" and could "give [him] any sentence he wanted, he could, 'give [him] 5 days, if he wanted to.'" *Id.* However, Petitioner claims, he learned at sentencing that that was a "lie" and that the judge was bound by the Guidelines. *Id.*

As Petitioner correctly notes, the plea agreement stated that the "maximum possible sentence" for the offense of possessing child pornography was a "term of imprisonment of 10 years." ECF No. 12 ¶ 1. The plea agreement also indicated that "the Court must consider but is not bound by the Sentencing Guidelines . . . ." ECF No. 12 ¶ 9. Petitioner's assertion that the Government "raised the Guidelines" apparently is based on paragraph 10, which states that "[p]ursuant to Sentencing Guidelines § 1B1.1(2)(a) [sic], [3] the government *and the defendant* agree that the defendant's Guideline range for imprisonment . . . shall be determined as if the defendant was convicted of a violation of Title 18, United States Code, Section 225l(a)." ECF No. 12 ¶ 10 (emphasis supplied); *see also* ECF No. 29 ¶ 30 (("The *parties agree* that pursuant to [U.S.S.G.] § 1B1.2(a), the defendant's sentencing range for imprisonment and fine shall be determined as if the defendant was convicted of a violation of 18 U.S.C. § 2251(a) [Production of Child

---

[3] This should read "§ 1B1.2(a)" instead. This Guideline instructs the court to "[d]etermine the offense guideline section in Chapter Two (Offense Conduct) applicable to the offense of conviction (i.e., the offense conduct charged in the count of the indictment or information of which the defendant was convicted)." However, U.S.S.G. § 1B1.2(a) contains a proviso that applies "in the case of a plea agreement (written or made orally on the record) containing a stipulation that specifically establishes a more serious offense than the offense of conviction," *id.*, in which case the court shall "determine the offense guideline section in Chapter Two applicable to the stipulated offense." *Id.*

Pornography]"); brackets in original, emphasis supplied).[4] Thus, contrary to Petitioner's contention, the Government did not unilaterally alter the Guidelines range to be used in calculating his term of imprisonment; rather, both parties stipulated to using a different Guideline than the one applicable to the offense charged in the Information.

There is nothing illegal or improper about the prosecutor seeking a proviso to U.S.S.G. § 1B1.2 to have Petitioner sentenced under a different Guideline, and the defense agreeing to such a stipulation. *See, e.g.*, *United States v. McCall*, 915 F.2d 811, 815 (2d Cir. 1990) (("If the government desired to have McCall sentenced under another Guidelines section, it could have sought an appropriate stipulation pursuant to a proviso to Section 1B1.2. That proviso establishes a mechanism for the government to extract a stipulation to conduct more serious than the offense of conviction in order to apply the Guidelines section for the more serious offense while retaining the statutory maximum sentence for the offense of conviction.") (citing U.S.S.G. § 1B1.2(a)).

Proper application of the Guideline § 1B1.2(a) proviso "turns on whether there was a knowing agreement by the defendant, as part of a plea bargain, that facts supporting a more serious offense occurred and could be presented to the court for application of guidelines relating to the more serious offense." *United States v. Gardner*, 940 F.2d 587, 591 (10th Cir. 1991) (citing *McCall*, 915 F.2d at 815; other citation omitted). Here, the agreed-upon facts set forth in the "Factual Basis" section of the plea agreement establish the offense of 18 U.S.C. § 2251(a). *See* ECF No. 12 ¶ 8 ("The defendant and the government agree to the following facts, which form the basis for the entry of the plea of guilty including relevant conduct . . . .") & *id.* ¶ 8(a)-(b).

---

[4] As the PSR correctly noted, ECF No. 29 ¶ 11, "[U.S.S.G. §] 2G2.1 is the relevant sentencing guideline for an individual convicted of producing child pornography in violation of 18 U.S.C. § 2251(a)." *United States v. Mudd*, 681 F. App'x 425, 427 (6th Cir. 2017) (citing U.S.S.G. App. A).

Under 18 U.S.C. § 2251, "[a]ny person who employs, uses, persuades, induces, entices, or coerces any minor to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct . . . shall be punished as provided under subsection (e) [of § 2251]," if certain interstate or foreign commerce elements are met, including where, as here, the "visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce . . . ." 18 U.S.C. § 2251(a); *see also, e.g.*, *United States v. Holston*, 343 F.3d 83, 90-91 (2d Cir. 2003). Sexually explicit conduct is defined in 18 U.S.C. § 2256(2)(A) and includes "lascivious exhibition of the genitals[.]" *Id.* § 2256(2)(A)(v). Section 8(b) of the plea agreement in particular states that Petitioner asked the 13 year-old victim, whom he knew was a minor, to send him a sexually explicit photograph; she sent him a close-up picture of her vagina; and he possessed this image on his cell phone which was manufactured outside of New York State. ECF No. 12 ¶ 8(b).

Moreover, using the Guidelines range for 18 U.S.C. § 2251(a) did not alter his maximum sentencing exposure. The "Guidelines' Application, Calculation and Impact" section of the plea agreement articulates the parties' understanding that, "with a total offense level of 33 and criminal history category of II, and taking into account the statutory maximum penalty, the defendant's sentencing range would be a term of imprisonment of 120 months," or 10 years. ECF No. 12 ¶ 161. This is identical to the maximum term for a conviction of possession of child pornography, as set forth in paragraph 1 of the plea agreement, *see id.* ¶ 1. Likewise, Judge Arcara noted at sentencing that "the advisory range for imprisonment is 151 to 188 months [12 to 15 years]," but since "the statutory maximum term of imprisonment is 120 months," "the guideline term of imprisonment is 120 months." ECF No. 49 at 3.  Thus, Petitioner's sentencing exposure did not vary at any point during the process of executing the plea agreement, pleading guilty, and being


sentenced. He was promised, and he received, the benefit of his bargain, *i.e.*, a ten-year cap on the potential sentence.

To the extent that Petitioner argues that the Sentencing Guidelines were mandatory and binding on Judge Arcara rather than advisory, that is contrary to the law as well as the record in this case, including the plea agreement and the sentencing transcript. *See* ECF No. 12 ¶ 9; ECF No. 49 at 3 ("[T]his Court must consider the applicable guidelines, but [is] not bound by them.").

Finally, Trial Counsel's alleged statement that Petitioner "could" receive a sentence of only five days cannot reasonably be interpreted as a promise or any other type of reliance-inducing representation regarding the length of a possible sentence. This is particularly so in light of Petitioner's assertion that Trial Counsel also told him he should hope for "merciful" treatment by the judge at sentencing. In any event, Petitioner expressly affirmed under oath that there were no promises made to him by anyone, other those that were contained in the plea agreement, *see* ECF No. 50 at 26, 27, and the plea agreement did not reference the possibility of a five-day term of imprisonment.

Because the record demonstrates there is no merit either to Petitioner's claim that his appellate and collateral attack rights waiver was involuntary and unknowing, or to his claim that Trial Counsel provided deficient representation in connection with the plea, the waiver is enforceable. *See Monzon*, 359 F.3d at 119 ("To find an appeal waiver unenforceable simply because the defendant makes the claim, where the record (a) indicates that the appeal waiver was knowing and voluntary and (b) does not show merit in the ineffective-assistance-of-counsel claim, would 'render the plea bargaining process and the resulting agreement meaningless[.]'") (quotation omitted). Since Petitioner was sentenced to less than 120 months' imprisonment, the collateral attack rights waiver precludes his attempt to seek relief under Section 2255, and his

remaining claims of ineffective assistance of counsel at sentencing and his challenges to his sentence are dismissed as procedurally barred. *Muniz v. United States*, 360 F. Supp. 2d 574, 580 (S.D.N.Y. 2005) (citation and footnote omitted); *see, e.g.*, *Brown v. United States*, 637 F. Supp. 2d 212, 224 (S.D.N.Y. 2009) ("Because Brown knowingly and voluntarily waived his right to appeal or collaterally attack any sentence below 387 months and [the judge] sentenced Brown to 260 months, Brown's claims all are barred [from collateral review].").

### C.     Evidentiary Hearing

An evidentiary hearing need not be held on a motion pursuant to 28 U.S.C. § 2255 "'if it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief . . . .'" *Armienti v. United States*, 234 F.3d 820, 822-23 (2d Cir. 2000) (quoting 28 U.S.C. § Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts; alteration in original). Here, "'viewing the . . . record in the light most favorable to the petitioner,' it is clear that . . . [P]etitioner has failed to establish a 'plausible claim of ineffective assistance of counsel.'" *Lake v. United States*, 465 F. App'x 33, 34-35 (2d Cir. 2012) (summary order) (quoting *Puglisi v. United States*, 586 F.3d 209, 213 (2d Cir. 2009); quotation marks omitted in original). Therefore, the Section 2255 motion will be dismissed without a hearing.

### D.     Certificate of Appealability

A certificate of appealability ("COA") may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where, as here, the Court rejects constitutional claims on procedural grounds, the prisoner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was

correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also United States Asemani*, 77 F. App'x 264, 265 (5th Cir. 2003) (*per curiam*) (district court's denial of Section 2255 motion because defendant waived his right to collaterally challenge conviction and sentence was a procedural ruling for COA purposes). Petitioner has not made such a showing, and therefore a COA will be denied.

## CONCLUSION

For the foregoing reasons, the motion to vacate, set aside, or correct the sentence, ECF No. 42, is DISMISSED, and a COA is DENIED. The Clerk of Court is directed to close civil case no. 18-CV-00966-FPG.

IT IS SO ORDERED.

Dated: November 10, 2020
      Rochester, New York

HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court